UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JANYCE AND ROLAND SYLVESTER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-4231** |
| **UNDERWOOD TRANSPORT, INC., OCCIDENTAL LIFE INSURANCE COMPANY OF NORTH CAROLINA, TIRE KINGDOM, INC., AND JOHN UNDERWOOD** | **SECTION "K"(1)** |

### ORDER AND OPINION

Before the Court is the "Motion for Summary Judgment" filed on behalf of defendant Tire Kingdom, Inc. Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, denies the motion.

### BACKGROUND

At approximately 6:00 a.m. on February 18, 2006, John Underwood attempted to back his 18-wheel truck into the parking lot of the Tire Kingdom store on Manhattan Boulevard in order to deliver a load of tires. In order to maneuver into the Tire Kingdom parking lot, Mr. Underwood had to pull his truck across both lanes of traffic on Manhattan Boulevard and then back into the parking lot. At the time that Mr. Underwood attempted this maneuver, the Tire Kingdom store was not open, there were no Tire Kingdom employees on the premises, and no one assisted Mr. Underwood by stopping traffic on Manhattan or acting as a flag man.

As Mr. Underwood was blocking both lanes of traffic on Manhattan Boulevard, Janyce Sylvester, who was driving her car in a northerly direction in the right hand lane on Manhattan, drove into Mr. Underwood's truck. Mrs. Sylvester sustained serious personal injuries in the accident

and died approximately six months thereafter.

Mrs. Sylvester and her husband filed suit against John Underwood, Underwood Transport, Inc,[1] Occidental Life Insurance Company of North Carolina ("Occidental"),[2] and Tire Kingdom, Inc. ("Tire Kingdom") seeking damages for the injuries sustained by Mrs. Sylvester. All claims, except those pending against Tire Kingdom, have been compromised and dismissed.

Mr. Underwood states that "James," a Tire Kingdom manager at the Manhattan Boulevard store, told him during a telephone conversation on Friday, February 17 to make the delivery on Saturday, February 18 when the store opened because on Friday afternoon they had a lot of customers at the store. Mr. Underwood understood that Tire Kingdom opened at 7:00 a.m. No one from Tire Kingdom instructed or suggested that he arrive at the store at 6:00 a.m. In his deposition John Underwood testified as follows:

> A. The day before, Friday, was when I had first contacted [the Manhattan Blvd] store.
>
> Q. How did you contact them?
>
> A. By telephone.
>
> Q. And that was by cell phone?
>
> A. Yes, sir.
>
> Q. Do you remember the number of the cell phone you were on making that call?
>
> A. Yes, sir.

---

[1] John Underwood is the sole stockholder in Underwood Transport, Inc.

[2] Occidental Fire and Casualty Company of North Carolina, incorrectly named as Occidental Life Insurance Company of North Carolina, is the insurer of Underwood/Underwood Transport.

    Q. What is that cell phone?

    A. 919/369/7037.

              . . .

    Q. . . . Do you recall making more than one call on that Friday on your cell phone to Tire Kingdom?

    A. I remember calling – when we finished at the store that I was at that was the next-to-last stop, before we drove out the driveway, I called this store and talked to a gentleman named James.

    Q. James?

    A. Yes, sir. And I told him – he's usually the one that would help me unload tires anyway – that we were on our way over, if he could be watching out for us.

    Q. And do you know what time of day this was?

    A. It was I want to say around 4:00 o'clock.

    Q. In the afternoon?

    A. Maybe it was 3:30.

(Doc. 88-17, p. 50 - 52).

    James Brand is the only Tire Kingdom manager named "James." He stated that he does not remember speaking with Mr. Underwood on Friday afternoon but does not deny that he did so.

LAW AND ANALYSIS

    The Federal Rules of Civil Procedure provide that summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its

motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655-56 (5th Cir.1996) (*citing Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.1992) *(quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)), cert. denied, 506 U.S. 832 (1992)). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. "[M]ere allegations or denials" are not sufficient to defeat a well-supported motion for summary judgment. Fed.R.Civ.P. 56(e). The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis supplied); *Tubacex, Inc. v. M/V RISAN*, 45 F.3d 951, 954 (5th Cir.1995).

Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 588. Finally, the Court notes that substantive law determines the materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

This is Tire Kingdom's second motion for summary judgment seeking to dismiss plaintiff's claims. Relying on *Allemand v. Zip's Trucking Co., Inc.*, 552 So.2d 1023, 1030 (La. App. 1st Cir. 1989), the Court denied Tire Kingdom's prior motion for summary judgment concluding that Tire Kingdom owed passing motorists a duty with respect to making deliveries, but noted that:

> assuming the conversation [between Underwood and Brand] took place . . . Mr. Brand clearly wanted Mr. Underwood to be there before the business was open, and in doing so, he had a duty, one could argue that it's a genuine issue of fact, to make sure that Mr. Brand and that Mr. Underwood could safely navigate the truck in there without the help of Tire Kingdom . . .

> But on this narrow issue, although I think it's very close, because of the conversation that I'm assuming occurred between Brand and Underwood, and only because of that, I'm finding that there's a genuine issue of material fact. That is, one; that Underwood was in essence told to come prior to opening and Brand clearly knew no one would be there. And therefore, by doing that and not, assuring that Underwood would go through the appropriate procedures to discharge the duty to motorists on the road; or two, not telling him do not come there until 7:00, and if you were there at 6:45 you would be there early. That was a potential breach of that duty; therefore, there is a genuine issue of material fact.

Doc. 87, p. 42-43.

Tire Kingdom now renews its motion for summary judgment. In support of its motion Tire Kingdom submits Mr. Underwood's cell phone record for February 17, 2006, and an affidavit from Robert Cassidy, the District Manager of Tire Kingdom, which states that "[n]one of the telephone numbers listed on the said telephone record are now or ever were the telephone numbers of Tire Kingdom's Manhattan Boulevard store." Plaintiff urges that the fact that there is no record of a call from his cell phone to the Manhattan Boulevard Tire Kingdom store is not fatal to his claim. To establish that John Underwood had a telephone conversation with James Brand on February 17, 2006, plaintiff submits telephone records for the Barataria Boulevard Tire Kingdom store which demonstrate that on February 17, 2006, at 3:36 p.m. CST, a call was made from an internal land line at the Barataria Boulevard store to the Manhattan Boulevard Tire Kingdom store. Plaintiff also relies on Mr. Underwood's affidavit stating:

- "While at the Tire Kingdom Barataria location, I called the Tire Kingdom Manhattan location and spoke with James Brand . . . to advise them that I was on my way to make the last delivery to their store";
- "I specifically recall that Mr. Brand told me that he was very busy with customers and asked that I wait until the following

> morning, Saturday, February 18, 2006, to make the delivery";
> - "I specifically recall that Mr. Brand stated that if I was at the Manhattan location when the store opened that my delivery could be unloaded right away";
> - "I do not recall the exact method of communication I used when I called and spoke to Mr. Brand at the Tire Kingdom Manhattan location on February 17, 2006, as it could have been by cell phone or by land line at the last Tire Kingdom store to which I delivered"; and
> - "While I may not recall the exact method of communication I used, I am certain that I spoke to James Brand at the Tire Kingdom Manhattan location on Friday, February 17, 2006, between 3:00 p.m. and 4:00 p.m."

Additionally, plaintiff relies on John Underwood's Responses to Requests for Admissions (Doc. 91-11) in which Mr. Underwood responded "Admitted" to the following requests: 1) "That on Friday, February 17, 2006, John Underwood, before leaving the Tire Kingdom store at 2244 Barataria Boulevard, in Marrero, Louisiana, communicated with James Brand at the Tire Kingdom store in Harvey, Louisiana on Manhattan Boulevard to advise that he was on his way to make his delivery"; and 2) "That while John Underwood does not recall the exact method of communication he used in obtaining those instructions [regarding the delivery on Saturday] from James Brand of Tire Kingdom, he is certain that this was communicated to him on Friday, February 17, 2006, either by cell phone or land line."

     Tire Kingdom contends that Mr. Underwood's affidavit contradicts without explanation his earlier deposition testimony, and therefore cannot be relied upon to defeat a motion for summary judgment. A party may not defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony. *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996). However, Mr. Underwood's affidavit does not necessarily contradict or impeach his deposition testimony to such an extent that the affidavit cannot be considered. For purposes of

this motion, the critical fact is whether Mr. Underwood had a conversation with James Brand on Friday, February 17 concerning the delivery of the tires on Saturday, not whether the call was made from Mr. Underwood's cell phone or a land line.  Plaintiff has produced evidence that at 3:36 p.m. CST on February 17, 2006, there was a telephone call placed from the Barataria Boulevard Tire Kingdom store to the Manhattan Boulevard Store.  Although the telephone record does not indicate who made that call or to whom the call the made, the telephone record from the Barataria Boulevard Tire Kingdom store is consistent with Mr. Underwood's deposition testimony that he made a call to the Manhattan Boulevard store "around 4:00 o'clock" or "[m]aybe it was 3:30."  The inconsistency concerning whether Mr. Underwood called the Manhattan Boulevard Tire Kingdom store using a cell phone or a land line at the Barataria Boulevard Tire Kingdom store, is only that - an inconsistency.  It does not impeach Mr. Underwood's deposition testimony that he in fact called the Manhattan Boulevard store on February 17 or that he spoke with "James."   Construing the evidence in the light most favorable to plaintiff, the non-moving party, the Court concludes that plaintiff has produced sufficient evidence to create a genuine issue of material fact concerning whether John Underwood spoke with James Brand on February 17.

Relying on *Scott v. Harris,* ___ U.S., 127 S.Ct. 1769, 167 L.Ed.2d (2007), Tire Kingdom urges that the facts need not be construed in the light most favorable to plaintiff because the record in this case blatantly contradicts plaintiff's version of the facts to the point that no reasonable jury could believe plaintiff's version of the facts.  In *Scott* a video tape of a police officer's pursuit of a fleeing motorist "utterly discredited" the motorist's version of events.  The Supreme Court held that:

> When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

7

> That was the case here with regard to the factual issue whether respondent was driving in such a fashion as to endanger human life. Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should have viewed the facts in the light depicted by the videotape.

*Id.* at 1776.

This case is easily distinguished from *Scott*. As noted herein above, for purposes of this motion, the material fact at issue is whether John Underwood spoke to James Brand, not the type of telephone on which the call was made. While the evidence establishing that no such call was not made from Mr. Underwood's cell phone does contradict Mr. Underwood's deposition testimony that he called the Manhattan Boulevard store on his cell phone, it does not "utterly discredit" his statement that he spoke with Mr. Brand via telephone on February 17, around 3:30 p.m. to 4:00 p.m., where there is evidence that a phone call was placed from the Barataria Boulevard store to the Manhattan store at 3:36 p.m. on February 17. A reasonable jury could credit Mr. Underwood's statement that he made such a call but was simply mistaken about the telephone from which the call was made. Accordingly, the motion for summary judgment is denied.

New Orleans, Louisiana, this 26th day of May, 2008.

UNITED STATES DISTRICT JUDGE
STANWOOD R. DUVAL, JR.